Judge Marshall
delivered the Opinion of the Court.
On the 24th of February, 1832, Bryant sold to Gaines, by executory contract, the tract of land on which Bryant lived; for which Gaines was to pay three thousand dollars, as follows: two hundred dollars to be paid in horses, on the 1st day of March following; three hun-. dred dollars on the 10th of the same month, when. he was to receive possession; four hunded dollars in. plank, on the 10th of April, and five hundred dollars on the 1st of September, when he might receive the title, by securing the residue of the purchase money—which. *396 was to be paid by instalments, in February 1833, 1834, and 1835. The horses were delivered oil the 1st of March, and of the first money instalment, two hundred and twenty-four dollars was paid on and before the 6th of the same month—leaving seventy six dollars, which was tendered on the 10th of March, when thepnstalment became due.
But it appears that, between the 6th and 10th of March, Bryant came to the determination not to execute the contract on his part; and on the last named day, he refused, either to receive the seventy-six dollars, then tendered, or to deliver the possession, as he was bound to do.
On the 2d of April, he executed to George Penn, a deed for the same land, which was immediately acknowledged, and deposited in the proper office for record; and about the same time, Penn was lot into the possession, which he has ever since retained.
On the 9th of April, Gaines filed this bill—in which, stating substantially the foregoing facts, ’alleging that Penn had notice of his prior contract for the land before he made his purchase, and averring his own ability and willingness to do every thing which remained to be done on his part, in fulfilment of the contract, he prays that the possession may be surrendered, and the title conveyed to hirg, according to the agreement. In an amended bill, filed in June, 1834, he alleges that he had duly tendered the several instalments which had then become due,, and that he would be ready to make the last payment also, which would be due in February, 1835; and in this bill, he prays as befoi’e, and for general relief.
The complainant’s allegations, except in regard to his ability to make full payment for the land, are in effect admitted by the defendants.'
Bryant attempts to excuse his eagerness, in the first instance, to get rid of the contract, on the ground that he very soon became convinced, that gains would not be able to make the payments provided for by the contract, and which were essential to save himself from ruin; and both Bryant and Penn justify the subsequent sale to the latter, on the ground that, on the 10th of *397 March, Gaines and Bryant had verbally agreed to cancel their contract on certain terms, for the performance of which, by Bryant, time was given until the 13th of the same month; that, in the interval, Bryant had sold the land to Penn, for the purpose of raising the sum to be paid to Gaines, under the terms of rescission; and Penn had advanced his money for the same purpose, and un*der a contract for the purchase of the land, made on thq faith of the verbal agreement for cancelling the previoug contract, and in the full confidence that, that agreement would be honestly carried into effect; and that, in fact, Bryant was ready on the 13lh, and offered to perforrp the terms of the verbal agreement on his part, but Gaines then declined receiving the offer which was made, and refused to cancel the contract. Other allegations are made in the answer of Penn, but being wholly unsupported by proof, the}r need not be detailed.
Decree and appeal.
Further facta dp inferences from the proofs. Sale of land by executory contract in writtng, and some payments made.— The vendor [refusing to comply with the contract —the parties agree, verbally, to rescind it, provid od the vendor per forms c'eriain cqn ditions, by a’eeríain time.—
*397 On final hearing, the bill as to Penn, was dismissed, with costs; and it was decreed that Bryant should pay to Gaines, the money received from him, with interest, and the estimated value of the horses without interest; and that each of these parties should pay his own costs. From this decree Gaines has appealed.
The parol agreement of rescission, as stated in the answers, is substantially proved. But if is evident that, so far as Gaines was concerned in it, his cpnsent did not proceed from any desire, or even willingness, to get rid of the contract on his part; but from what seemed to be a necessity of receiving back, if he could get it, the money and property which he had paid, as Bryant showed a determination that he should not have the land for. which he had paid it. This determination had been evinced, not only by the refusal of Bryant to receive the payment and deliver possession on the lO.th of March, but by his previous declarations and acts, from the violent character and obvious tenor of which, Gaines might well have apprehended great difficulty in getting either the land or the money. We have no doubt, from the evidence, that Bryant was willing and perhaps desirous, after the agreement had been made, to comply with its conditions, and thus procure a rescission of the contract. *398 And if Gaines had been equally desirous, it is probable that, when the parties met on the 13th, there might have been a satisfactory adjustment of the matter. But un-. der the circumstances which have been noticed, Bryant could have scarcely expected less than that Gaines would require a strictly technical performance of the conditions on which the contract was to be rescinded; and would have had little right to complain if he had willfully refused to comply with the verbal agreement.
A third party, yvho, with notice of that sale, buys the land dus;i*ng the time allowed "the vendor' to 'rescind,' takes it subject to his failure to perform the conditions; and acquires no title or right, by his purchase, that can prevail against the equity of the first purchaser— unless the latter induced him to make the purchase.
Should the first purchaser refuse to comply with the verbal con-* tract ofrescissiop —even without a good excuse, that contract and refusal would, as between him & the vendor only, form no obstacle to the enforcement of the contract of sale.
*398 We are not satisfied from the evidence, that Bryant tendered a strict performance of the conditions on his part; or that if the parol agreement had been obligatory, Gaines was bound by its terms, to accept the tender made on the 13th, and then give up the contract.
In this view of the case, and it being clear, upon the proof, that Penn had notice of the sale to Gaines, several days before the 10th of March, he could not have held the land by any contract he could have made with Bryant, between the 10th and 13th, unless, as intimated in his answer, he had been drawn into the contract by assurances from Gaines himself. For, otherwise, he must have purchased subject at least to the hazard of Bryant’s failure to comply with the conditions on which alone the known prior equity of Gaines would be extinguished. And as there is no proof that Gaines did, in any manner, encourage or induce Penn to purchase the land, it would follow, -that his purchase, whether carried fully into effect or not, was unsupported by any equity which coytld rebut or resist that of Gaines. •
But admitting what, upon a liberal construction of the facts, should perhaps be taken as true, that Bryant did, on the appointed day, tepder a substantial performance of the conditions of the verbal agreement, and that Gainps, upon insufficient pretexts, refused to rescind the written contract—it is not, and cannot, with any plausibility be contended, that the mere existence, for three days, of this parol agreement of rescission, and a refusal to comply with i,t on the part of Gaines, could present, as between him and Bryant alone (no other interest or obligation intervening) any obstacle, to the enforcement of the written contract. And Gaines having, *399 in every other particular* shown a desire to have the benefit of the contract, and having promptly paid or tendered, so far as Bryant would permit, every thing that could be required of him under it—so that his equity as against Biyant, to have it specifically enforced, was perfect—the question is, whether the legal title subsequently acquired by Penn, can, under the actual circumstances of the case, be considered as being held subject to that equity.
A 2nd purchaser, with notice, relying upon the agreement for a rescission of the first sale, must show, that his purchase was made daring the time allowed thd vendor to comply with theterms Of rescission: a purchase after that agreement Was at an end, could not be justified.
And even if hid purchasfe was made during that interval ;& while he had a right to expect that the first sale would be' rescinded,- it Wtfuid be' incumbent on him to show that fact by satisfactory proof,- and also, that he had paid the consideration and obtained the legal title—to en able him to hold the land against the prior equity of the first purchaser.
As the mere existence of the parol agreement of rescission, and Gaines5 refusal to comply with it, did not destroy nor even suspend his equity against Bryant, it Would be absurd to suppose, that these facts would have justified any third person in purchasing the land, after the parol agreement was at an end. It is incumbent, therefore, upon Penn, before he Can claim any benefit from these facts, to show that his purchase was made during the pendency or existence of the parol agreement, and while he had a right to expect that Gaines would carry it into effect on his part. In this important particular, he has wholly failed» We may, indeed, infer from the evidence, that he advanced two hundred and fifty dollars to Bryant, between the 10th and 13th of March, to enable him to make the requisite payment or tender to Gaines. But there is no direct evidence even of this fact. And whether, if he did make this advance, it was done upon an absolute, or on a contingent contract or purchase, or upon the promise of a contract when the previous one should be rescinded, the evidence furnishes no means of determining. It might be conjectured that, as a prudent man, he would not have entered into an absolute Contract of this magnitude, upon the ground of a mere report that Gaines had verbally agreed to rescind his contract for the same land. And as the deed of the 2d of April is the only written evidence of his purchase, which is either-exhibited, or alluded to in the pleadings or evidence, it is difficult to find any basis for the presumption that an absolute contract of purchase was made between the 10th and 13th of March.
But if we arc to presume, that an absolute contract for the sale of the land was made, between Biyant and *400 Pemi;hi the interval from the 10th to the 13th of March, and that two hundred and fifty dollars were then advanced, under that contract, and on the faith of the verbal agreement, it is certain, that the purchase was not then completed. The deed was not made for several weeks afterwards; and Penn had not then, nor even when he filed his answer in this case, paid more than one third of the purchase money. Whatever, then; might have been the attitude of Penn, if in the interval referred to, and while he really expected the verbal agreement to be complied with, he had not only com* taenced, but completed, his purchase, by paying the whole consideration; and receiving the legal title: we aré of opinion that if he made the contract, and paid a part of the purchase money, while he might have had some ground for such an expectation, this does not pro* tect his purchase;
If the 2d purchaser was drawn in to make the purchase by the fraud of the fiist purchaser, or by liis assurance of safety, that fact would constitute n rebutter to the equity of the latter, which might support tho legal title acquired by the former: other wise, the utmost effect of the verbal agreomentfor rescission would be, to relieve the 2nd purchaser, for the time that agreement was pending from the effect of notice; from the time the agreement was abandoned, or at least as soon as he knew it, he would be again subject to the effect of notice; and a purchase afterwards made, would be subject to the first purchaser’s equity.
Penn, as already stated, had notice of the prior equity of Gaines, and was, therefore, bound by it; and although any fraudulent conduct on the part of Gaines, or any encouragement or assurance of safety from him to Penn, by which the latter might have been induced to make the purchase, would have created a rebutting equity on his side, by which his legal title might have been supported—yet, in the absence of any such ground of equity, the utmost effect which can be claimed for tho parol agreement (if indeed it is entitled to so much) is to consider it as relieving the subsequent purchaser from the effect of notice; while it subsisted, and he could he supposed to confide in it, so that he would be left again subject to the effects of notice, so soon as the verbal agreement was at an end, by the disavowal of one of the parties; or, at least, so soon as the knowledge of its being thus terminated, can be justly imputed to him. From which tiine, he would be no more at liberty to go on to complete his purchase, and is as much bound by tixe prior equity, as if he had commenced his purchase without any knowledge of the equity, and had afterwards received notice of it, before he had both paid the price and received the title. In which case, as has been often decided, he would have held the title subject to the prior *401 equity. Sugden on Vendors, 2d Am. Ed. 530, and the numerous cases there referred to.
A purchase mads with notice, pending the agreement for rescission, and while the purchaser might expect its fulfilment,—tho’ the consideration were paid', and a deed made, would, perhaps, be subject to the hazard of its non execution'; but quere.
Holder of an s* toryyc'onttactCof purchase, succeeds against his vendor and á subsequent purchaser, who had acquired tile legal title: complainant should have a day given him, by which to bring the money, to complete the payments, into court, and upon his doing it, the holder of the title should convey the land to him.
The complainant is to pay no interest, because the land was wrongfully withheld from him.
If complainant fails to pay the balance of the purchase money, his bill, so far as it goes for the title, may be dismissed. But he will then be entitled to a decree for the restoration of the money and value of the property he has paid, with interest, on both.
The vendor being insolvent, or out of the state, the complainant will have a Hen on the land, for payments made for it, unless the 2nd purchaser will refund them to him; ty which Fe will be entitled to a credit for so much, by the vendor,
There is no proof in this case, that when Gaines agreed to rescind his contract, he had any reason to believe, that Poiin desired to purchase the land, or that he knew, when he refused afterwards to rescind; that Penn had made any contract or advanced any money on the faith of that agreement. Nor does it appear, thát he either made or authorized any communication <3r assui" anee to be made to Penn, upon the subject; or that he encouraged him to make the purchase in any other man1 ner than may be implied from the'fact of his consenting, under the circumstances above stated, to rescind the contract at a future day» And assuming, as we may, that Penn received the information of that assent from Bryant, or from some casual by-stander, it may be doubted whether, in acting upon the information thus communicated, he should not bé considered as subjecting himself to all hazards, and among them, to the hazard that either party might disavow an agreement which neither could be compelled to perform. If this be so; he could not have resisted the equity of Gaines, even if he had completed his purchase at onqe, -while the verbal agreement was still subsisting. j
But be this as it may, as he certaiqly did not complete his purchase on the faith of the agreement of rescission; and has not in fact completed it yet; we do not perceive any ground on which he can be permitted to prevent Gaines from perfecting his prior contract, without a violation of the settled principles on which the prior equity is enforced against a subsequent purchaser with notice.
We are of opinion, therefore, that, instead of dismissing the bill as against Penn, a day should have been given *402 for the complainant to pay so much of the purchase money as remains due on his contract without interest; for' which, as he has been wrongfully kept out of the possession,he should not be held liable; and that Upon such payment being made, he would be entitled to a conveyance of the land from Penn, who may be allowed so to prepare his case as, in that event, to be repaid the sum which he has paid to Bryant for the land, out of the money to be paid for it by Gaines; which money should, be directed to be paid into Court. But if Gaines should fail to pay the money due from him, then his bill, so far as it seeks a conveyance, should be dismissed; and he would be entitled to a decree against Bryant for the money heretofore paid under the contract, and for the estimated value of the horses, with in terest upon these sums, from the time they were due, according to the contract. And, as it may be presumed, from the evidence in the cause, that Bryant is in labouring circumstances, and has probably removed from the state, the sums which may b.e decreed to Gaines, should be secured by subjecting the land to its payment, unless Penn shall pay it; in which case, he should have a credit therefor, on the balance remaining due from him to Bryant, for the land. And the parties should have leave to take the proper steps for ascertaining such facts as* it may be necessary to ascertain in order to carry out these principles.
The decree is reversed, and the cause remanded for' further proceedings in conformity with this opinion.